UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE GAIL BOISCLAIRE,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Commissioner of Social Security,[1]<br><br>Defendant. | No. 2:18-cv-1748 DB<br><br><br><br>ORDER |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[2] Plaintiff's motion argues that the Administrative Law Judge erred by finding that plaintiff did not meet a Listing Impairment and by improperly rejecting medical opinion evidence.

////

////

---

[1] Andrew Saul became the Commissioner of the Social Security Administration on June 17, 2019. See https://www.ssa.gov/agency/commissioner.html (last visited by the court on July 30, 2019). Accordingly, Andrew Saul is substituted in as the defendant in this action. See 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] Both parties have previously consented to Magistrate Judge jurisdiction over this action pursuant to 28 U.S.C. § 636(c). (See ECF Nos. 8 & 9.)

1

For the reasons explained below, plaintiff's motion is granted, the decision of the Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for further proceedings consistent with this order.

## PROCEDURAL BACKGROUND

On May 7, 2014, plaintiff filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") alleging disability beginning on October 31, 2000. (Transcript ("Tr.") at 21, 125, 257-58.) On April 15, 2014, plaintiff filed an application for Supplemental Security Income ("SSI") under Title XVI of the Act also alleging disability beginning on October 31, 2000. (Transcript ("Tr.") at 21, 257-65.) Plaintiff's alleged impairments included depression, anxiety, bipolar disorder, and ankle arthritis. (Id. at 110.) Plaintiff's applications were denied initially, (id. at 167-71, 173-77), and upon reconsideration. (Id. at 182-87.)

Plaintiff requested an administrative hearing and a hearing was held before an Administrative Law Judge ("ALJ") on January 25, 2017. (Id. at 36-109.) Plaintiff was represented by an attorney and testified at the administrative hearing. (Id. at 36-38.) In a decision issued on May 12, 2017, the ALJ found that plaintiff was not disabled. (Id. at 30.) The ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2007.
>
> 2. The claimant has not engaged in substantial gainful activity since October 31, 2000, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: depressive disorder, post-traumatic stress disorder (PTSD), generalized anxiety disorder, and status-post left ankle fracture. (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except

2

> she can occasionally climb ladders, ropes, and scaffolds. She can frequently climb ramps and stairs. The work should require only occasional interaction with the public, co-workers and supervisors. The work should require only occasional supervision, defined as requiring a supervisor's critical checking of the person's work. The work is limited to simple, routine, repetitive tasks in a work environment with only occasional production rate or pace work. The work should involve only simple, work-related decisions with few, if any, changes in the work place.
>
> 6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).
>
> 7. The claimant was born [in] 1973 and was 26 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).
>
> 8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from October 31, 2000, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Id. at 23-30.)

On April 17, 2018, the Appeals Council denied plaintiff's request for review of the ALJ's May 12, 2017 decision. (Id. at 1-5.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on June 18, 2018. (ECF. No. 1.)

**LEGAL STANDARD**

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

////

support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

////

////

4

**APPLICATION**

Plaintiff's pending motion argues that the ALJ committed the following two principal errors: (1) the ALJ erroneously found that plaintiff did not meet a Listing Impairment; and (2) the ALJ improperly rejected medical opinion evidence. (Pl.'s MSJ (ECF No. 12) at 15-24.[3]) However, although these claims are presented as distinct they are, in fact, related. In this regard, plaintiff argues that the ALJ improperly rejected the opinion of Dr. Glenn Griffin, a non-examining expert witness, who opined that plaintiff's impairments where consistent with Listing 12.04 and 12.06.[4] (Id. at 19-20.)

At step three of the sequential evaluation, the ALJ must determine whether a claimant's impairment or impairments meet or equal one of the specific impairments set forth in the Listings. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The physical and mental conditions contained in the Listings are considered so severe that "they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or any other jobs." Lester, 81 F.3d at 828. The Listings were "designed to operate as a presumption of disability that makes further inquiry unnecessary." Sullivan v. Zebley, 493 U.S. 521, 532 (1990); see also Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001). If a claimant shows that his impairments meet or equal a Listing, he will be found presumptively disabled. 20 C.F.R. §§ 404.1525-404.1526, 416.925-416.926.

The claimant bears the burden of establishing a prima facie case of disability under the Listings. See Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002). To "meet" a listed impairment, the claimant must establish that his condition satisfies each element of the listed

---

[3] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

[4] According to the regulations applicable at the time of the ALJ's decision, Listing 12.04 concerned "[d]epressive, bipolar and related disorders . . . characterized by an irritable, depressed, elevated, or expansive mood, or by a loss of interest or pleasure in all or almost all activities, causing a clinically significant decline in functioning." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.04 (Mar. 27, 2017). Listing 12.06 concerned "[a]nxiety and obsessive-compulsive disorders . . . . characterized by excessive anxiety, worry, apprehension, and fear, or by avoidance of feelings, thoughts, activities, objects, places, or people." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.06 (Mar. 27, 2017).

impairment. See Zebley, 493 U.S. at 530; Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999). To "equal" a listed impairment, the claimant "must establish symptoms, signs, and laboratory findings" at least equal in severity and duration to each element of the listed impairment. Id.

"An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." Lewis, 236 F.3d at 512 (citing Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990) ("We hold that, in determining whether a claimant equals a listing under step three of the Secretary's disability evaluation process, the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments.")).

Moreover, an "ALJ must provide a discussion of the evidence and an explanation of reasoning for his conclusion sufficient to enable meaningful judicial review." Diaz v. Commissioner of Social Sec., 577 F.3d 500, 504 (3rd Cir. 2009) (quotation omitted); see also Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) ("The ALJ's decision regarding the applicability of Listing 1.04A is devoid of reasoning. . . . This insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings.").

Here, at step three of the sequential evaluation the ALJ made the following findings with respect to Listing 12.04 and Listing 12.06:

> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least one extreme or two marked limitations in a broad area of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves. A marked limitation means functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited. An extreme limitation is the inability to function independently, appropriately or effectively, and on a sustained basis.
>
> In understanding, remembering, or applying information, the claimant has no limitations. The claimant alleged that she has difficulty remembering generally and completing tasks. However, the claimant also stated that she could prepare meals, go to doctor's appointments, take medications, shop, and drive. In addition, the

6

> record shows that the claimant was able to provide information about her health, describe her prior work history, follow instructions from healthcare providers, comply with treatment outside of a doctor's office or hospital, respond to questions from medical providers, and there is no mention of any issues with the claimant's short- or long-term memory.
>
> In interacting with others, the claimant has no limitations. Here, the claimant alleged that she has difficulty engaging in social activities and spending time in crowds. However, according to her statements, the claimant is also able to get along with others, shop, spend time with friends and family, deal appropriately with authority, and live with others. Finally, the medical evidence shows that the claimant had a good rapport with providers, was described as pleasant and cooperative, had good interactions with non-medical staff, and appeared comfortable during appointments.
>
> The next functional area addresses the claimant's ability to concentrate, persist, or maintain pace. For this criterion, the claimant has no limitations. The claimant contended that she has limitations in concentrating generally and completing tasks. On the other hand, the claimant said that she is also able to drive, prepare meals, read, and handle her own medical care. Additionally, the record fails to show any mention of distractibility and an inability to complete testing that assesses concentration and attention.
>
> Finally, the claimant has no limitations in her ability to adapt or manage herself. The claimant asserted that she has difficulties managing her mood. That said, the claimant also stated that she is able to handle self-care and personal hygiene and get along with caregivers. Meanwhile, the objective evidence in the record showed the claimant to have appropriate grooming and hygiene, no problem getting along well with providers and staff, normal mood and affect, and no problems with temper control.
>
> The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria because there is no evidence symptoms cause marginal adjustment, defined as an inability to adapt to changes in your environment or to demands that are not already part of your daily life.

(Tr. at 24-25.)

The ALJ's findings, however, are directly contradicted by the testimony of medical expert Dr. Glenn Griffin, Ph.D. In this regard, after a review of plaintiff's medical records, Dr. Griffin provided expert witness testimony at the January 25, 2017 hearing. (Tr. at 47-72.) Dr. Griffin's testimony was substantial and included the following opinions. That plaintiff had "a major depressive disorder of moderate severity," that lasted for 12 continuous months. (Id. at 54-55.) That plaintiff also had "generalized anxiety disorder." (Id. at 56.) That "the combination of

7

[plaintiff's] depression and anxiety" rendered plaintiff's "capacity to understand mildly impaired, capacity to remember mildly impaired, [and] capacity to apply information moderately impaired." (Id. at 58.)

That plaintiff's ability to interact with others was "[m]arkedly impaired[.]" (Id. at 59.) That plaintiff had a "marked impairment in concentration, moderate impairment in persistence, [and] moderate impairment in pace." (Id. at 61.) And that plaintiff was "moderately impaired overall," in the ability to "adapt or manage oneself[.]" (Id. at 62.)

Dr. Griffin also testified that plaintiff's impairment would "likely preclude competitive, gainful employment." (Id. at 63.) That plaintiff "[c]annot" apply information technically. (Id. at 65.) That plaintiff "would not be able to concentrate even at simple, repetitive work for any sustained period of time or for a period of time that would be compatible with competitive gainful employment." (Id. at 66.) Plaintiff also lacked the ability to perform activities within a schedule, maintain regular attendance, and be punctual. (Id.) Nor could plaintiff sustain an ordinary routine without special supervision. (Id.)

Dr. Griffin's went on to testify that plaintiff did not have the ability to work in coordination or in proximity to others. (Id. at 69.) That plaintiff could not complete a normal workday and work week without interruptions for psychologically based symptoms. (Id.) Plaintiff also could not interact with the public, get along with coworkers, or accept instructions. (Id. at 70.) Finally, Dr. Griffin testified that plaintiff did not have the capacity to respond appropriately to changes in the work setting or to travel or use public transportation. (Id. at 70-71.) In essence, Dr. Griffin opined that plaintiff's impairments "meet the listing." (Id. at 68.)

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ." Lester, 81 F.3d at 830. This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient

////

8

as an individual. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

The uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons, while the opinion of a treating or examining physician that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830-31. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." (Id. at 831.) Finally, although a treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

The ALJ's decision acknowledged that Dr. Griffin provided opinion testimony but did not discuss the nature of that testimony or Dr. Griffin's opinion. Instead, the ALJ simply stated that the "testimony of the medical expert, Glenn Griffin, Ph.D., is given minimal weight as he was non-examining and the record as a whole supports a finding of non-disability within the limitations of the residual functional capacity." (Id. at 28.)

Although it is true that Dr. Griffin was a nonexamining physician, the ALJ elected to afford more weight to the opinions of "the physicians and psychologists employed by the State Disability Determination Services," despite the fact that they were also nonexamining physicians. (Id. at 28.) And, unlike Dr. Griffin, the State Disability Determination Services' physicians did not testify at a hearing. See Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) ("Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it.").

Moreover, the ALJ provided no citation, let alone explanation, for the vague and conclusory assertion that "the record as a whole supports a finding of non-disability within the limitations of the residual functional capacity." (Id.) "The Commissioner may reject the opinion

of a non-examining physician by reference to specific evidence in the medical record." Sousa v. Callahan, 143 F.3d 1240, 1244 (9th Cir. 1998) (citing Gomez v. Chater, 74 F.3d 967, 972 (9th Cir. 1996)).

For the reasons stated above, the court finds that the ALJ failed to provide a reason supported by specific evidence for rejecting Dr. Griffin's opinion.[5] Accordingly, plaintiff is entitled to summary judgement on this claim.

## CONCLUSION

After having found error, "'[t]he decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" Trevizo v. Berryhill, 871 F.3d 664, 682 (9th Cir. 2017) (quoting Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014).

Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court

---

[5] Defendant attempts to provide the explanation and support lacking in the ALJ's decision. (Def.'s MSJ (ECF No. 15) at 14-19.) The court, however, may not speculate as to the ALJ's findings or the basis of the ALJ's unexplained conclusions. See Burrell v. Colvin, 775 F.3d 1133, 1138 (9th Cir. 2014) ("We are constrained to review the reasons the ALJ asserts."); Bray v. Commissioner of Social Security Admin., 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."); Stout v. Comm'r, 454 F.3d 1050, 1054 (9th Cir. 2006) (a reviewing court cannot affirm an ALJ's decision denying benefits on a ground not invoked by the Commissioner).

concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, "there were no examining or treating physician opinions contained within the record[.]" (Pl.'s MSJ (ECF No. 12) at 23.) As such, the court cannot say that further proceedings would serve no useful purpose. This matter will, therefore, be remanded for further proceedings.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 12) is granted;

2. Defendant's cross-motion for summary judgment (ECF No. 15) is denied;

3. The Commissioner's decision is reversed;

4. This matter is remanded for further proceedings consistent with this order; and

5. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

DATED: September 17, 2019

/s/ DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.soc sec\boisclaire1748.ord